J. D. MARSHALL INTERNATIONAL, INC., Plaintiff-Appellant, *v.* LESLIE FRADKIN *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 79-1661

Opinion filed June 30, 1980.—Rehearing denied August 15, 1980.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago (John B. Angelo, Keith A. Klopfenstein, Jr., Robert C. Newman, and Robert E. Wangard, of counsel), for appellant.

Kevin M. Forde, Ltd., and William T. Rodeghier, both of Chicago, for appellees Richard Ellis and Aldon International, Inc.

Richard J. Prendergast, of Chicago, for appellee Leslie Fradkin.

Michael S. Welzien, of Villa Park (Michael F. Walsh, of counsel), for appellee Thomas McShane.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, J. D. Marshall International, Inc., brought this action for injunctive relief against defendants, Leslie Fradkin, Richard Ellis, Aldon International, Inc., and Thomas McShane, seeking to enforce post-employment restrictive covenants and prevent tortious interference with its business relationships. Plaintiff appeals the trial court's allowance of defendants' motions to dismiss the complaint. The court held that the complaint failed to state a cause of action, finding that the restrictive covenants were void as a matter of law. The pleadings reveal the following pertinent facts.

Plaintiff, an Illinois corporation, is engaged in the business of buying products manufactured by various domestic companies and then selling and exporting these products to foreign customers. The business operates primarily under agreements giving plaintiff the exclusive right to export the products of certain domestic suppliers.

Fradkin, Ellis and McShane were employees of plaintiff. Fradkin was employed by plaintiff from March 1, 1976, through December 31, 1978. Fradkin was director of the construction equipment division, and his duties included procuring construction equipment from domestic producers and exporting such products to foreign customers. Fradkin's written employment agreement with plaintiff provided, in relevant part:

"In consideration of the fact that you are employing me as an executive of your company, in a position of confidence, I agree that in the event that my employment is terminated, for any reason whatsoever, I will not for a period of two years, either accept employment or accept to represent, or seek employment with, or seek to represent in any capacity whatsoever, as an office worker, manager, consultant, salesman, sales representative or sales agent—any manufacturer, fabricator, exporter or importer whom you are representing or with whom you have commercial relations at the time of termination of my employment or that you had represented or with whom you had commercial relations during the period of my employment with you."

Ellis was employed on May 2, 1977, through December 31, 1978, as director of plaintiff's power generator set division, and was responsible

for buying power generator sets from domestic suppliers for export to foreign customers. McShane, another executive, was hired on August 27, 1977, and was in plaintiff's employ when this action was instituted. Ellis and McShane both executed employment agreements containing the following provisions:

"In consideration of your employing me as an executive of your company in a position of trust and confidence, I agree that in the event my employment is terminated for any reason whatsoever, I will not for a period of two years following the termination of my employment:

(a) directly or indirectly (i) seek or accept employment with any manufacturer, fabricator or supplier with whom I have directly or indirectly contacted during my employment with you; or (ii) represent in any capacity whatsoever as an employee, owner, consultant, salesman, sales representative or agent any manufacturer, fabricator or supplier with whom I have directly or indirectly contacted during my employment with you; and

(b) communicate, furnish, or divulge the identity of any entity with which you have conducted business or any information concerning your business, which information was communicated to me by virtue of my employment with you."

In addition to the post-employment restrictive covenants, each of the three employees agreed that during his period of employment with plaintiff, he would not, without plaintiff's consent, engage in any remunerative or commercial activities other than his work for plaintiff.

On May 22, 1979, plaintiff filed its four-count complaint for injunctive relief against defendants. Count I alleged that, while employed by plaintiff, Fradkin, Ellis and McShane entered into a conspiracy to appropriate plaintiff's business to their own benefit by diverting orders from plaintiff's foreign customers and by causing other companies to fill these orders through purchases from plaintiff's domestic suppliers. Plaintiff charged that in furtherance of this conspiracy, defendants incorporated Aldon for the purpose of receiving and filling orders thus diverted. Plaintiff also alleged that McShane, while employed by plaintiff, procured orders from one of plaintiff's exclusive distributors and diverted the orders to Aldon. Plaintiff accused Ellis and Aldon of having paid or promised to pay McShane a portion of Aldon's profits as compensation for securing these orders.

The complaint also alleged that after leaving plaintiff's employ, Fradkin sought and accepted employment as vice-president of marketing with Whiteman Manufacturing Company; that Whiteman was a manufacturer and fabricator which had supplied construction equipment to plaintiff while Fradkin was employed by plaintiff; that Fradkin

willfully, knowingly and maliciously attempted to induce Whiteman to terminate or breach its exclusive export sales agreement with plaintiff by representing to foreign customers that plaintiff's terms for Whiteman's products were unfair; and that such conduct diminished plaintiff's sales of Whiteman's products. Plaintiff also complained that after leaving Marshall, Ellis and Aldon solicited plaintiff's foreign customers to purchase, through Aldon, products manufactured by White Engines, Inc., a supplier with which Ellis had dealt when employed by plaintiff. Ellis allegedly also caused Aldon to place orders for construction equipment with Construction Forms, Inc., another supplier contacted by Ellis while employed by plaintiff.

Plaintiff charged that it had been irreparably injured by the conspiracy and actions taken in furtherance thereof; that it would continue to suffer irreparable injury unless defendants were enjoined; and that it had no adequate remedy at law. Plaintiff thus requested temporary and permanent injunctive relief enjoining Fradkin from further employment by Whiteman; restraining Ellis and Aldon from soliciting plaintiff's foreign customers to purchase products of plaintiff's suppliers through Aldon; enjoining McShane from soliciting and Ellis and Aldon from accepting or filling orders obtained from plaintiff's foreign customers; and restraining Ellis and Aldon from purchasing products for export from Construction Forms, Inc. Count II essentially restated the claim against Fradkin; count III realleged the charges against the other three defendants. Count IV, in addition to reiterating the allegations against McShane, contained charges against another party, whom plaintiff subsequently dismissed from the action.

Fradkin filed a motion to dismiss the complaint for failure to state a cause of action, maintaining that plaintiff's action was based on an alleged "non-competition" agreement which purported to prohibit defendants from engaging in any commercial activities that might compete with plaintiff anywhere in the world, and that such agreement was void as a matter of law. Ellis and Aldon filed a joint motion to dismiss containing the same arguments as Fradkin. McShane filed a motion to dismiss asserting that the "contract not to compete" was an unreasonable restraint and void, and that plaintiff was barred by laches.

On August 31, 1979, after considering the pleadings, memoranda and arguments of counsel, the trial court concluded that the restrictive covenants were unreasonable in their geographic scope and therefore void as a matter of law. The court thereupon granted the motion to dismiss the complaint. Plaintiff did not seek to amend the complaint. Plaintiff appeals the order of dismissal.

■■ Enforceability of a restrictive covenant is conditioned upon its reasonableness in terms of its effect upon parties to the contract and the

public. (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21; *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) Whether a restrictive covenant is reasonable and enforceable is a question of law. (*Barrington Trucking Co. v. Casey* (1969), 117 Ill. App. 2d 151, 253 N.E.2d 36.) Each case must be determined in accordance with its own facts and circumstances which, by necessity, vary in time, area and degree of confidential relationship between employer and employee. *Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 392 N.E.2d 1148.

This court has had occasion to consider the reasonableness of restrictive covenants, which, as here, contain no geographic limitation. In *Wolf & Co. v. Waldron* (1977), 51 Ill. App. 3d 239, 366 N.E.2d 603, we held that where an employer conducted business on a nation-wide basis, and the covenant restricting contact with a former client was designed to protect the employer from losing client contacts by reason of the former employee's knowledge of clients' requirements, the absence of a geographic limitation was not unreasonable. In *Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300, this court, relying on *Wolf*, upheld covenants containing no geographic limitation, where the employer did business throughout the country, and the covenants restrained only the solicitation of certain suppliers of the employer and the disclosure of confidential information.

■■ In the present case, the restrictive provisions set out in the pleadings are "activity" covenants designed not to prohibit competition, but to protect plaintiff's relations with its suppliers, and as such, do not require a geographic limitation. Therefore the covenants are not void as a matter of law. Under the covenants, defendants are required to refrain from seeking or accepting employment with or representing plaintiff's suppliers. They are not precluded from participating in the export industry as competitors or from soliciting other domestic suppliers. The covenants evidence an intent to protect plaintiff's contracts and business relations with its suppliers, and to avoid the loss of suppliers to defendants. As these suppliers are located nationwide, delineating a geographic area would serve no purpose. (See *Wolf & Co. v. Waldron.*) By these covenants, plaintiff sought merely to prevent defendants from dealing with certain designated suppliers, not to impose a world-wide restriction upon defendants' activities in the export industry.

As support for its ruling that the covenants were void ab initio, the trial court cited *Statistical Tabulating Corp. v. Hauck* (1973), 10 Ill. App. 3d 50, 293 N.E.2d 900. That case, however, is clearly distinguishable from the matter before us. There the restrictive covenant precluded the party from engaging in a business similar or competitive to that of the plaintiff within 100 miles of 20 large cities in the country. After finding no

justification for a restriction covering a substantial area of the country, the court held that the covenant, being manifestly unreasonable in its inception, was unenforceable and could not be given legal life by partial enforcement. Here, in contrast, the covenants do not prohibit defendants from competing with plaintiff in the export industry, nor do they prevent defendants from operating in any particular geographical territory: The provisions merely restrict defendants from contacting certain suppliers.

Defendants argue that the complaint does not allege the existence of a legitimate business interest which would justify enforcement of the post-employment restrictive covenants. The protection of an established clientele from takeover by a former employee is recognized as a legitimate interest of the employer. (*Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) Moreover, courts have enforced restrictive covenants where an employee has acquired confidential information regarding customer requirements. See *Donald McElroy, Inc. v. Delaney*; *Wessel Co. v. Busa*. Exhibits accompanying plaintiff's complaint indicate, in relevant part, that defendants were hired in positions of trust and confidence; that they agreed not to reveal the identity of any entity with whom plaintiff conducted business or to divulge any information about plaintiff's business which was communicated by virtue of their employment with plaintiff; and that they promised not to represent or accept employment with any supplier with whom they had contact during their employment with plaintiff. The complaint alleges that in violation of their post-employment restrictive covenants, defendants represented or accepted employment with suppliers of plaintiff, one of which had an exclusive export agreement with plaintiff. Thus we believe the complaint, liberally construed, sets forth a legitimate business interest: the protection of plaintiff's supplier relationships or contractual arrangements.

We conclude that plaintiff has stated a cause of action for enforcement of the post-employment restrictive covenants. The trial court therefore erred in dismissing the complaint.

Moreover, we believe the dismissal of the complaint in its entirety was improper for an additional reason. Apart from the post-employment covenants, the complaint contained other well-pleaded causes of action: tortious interference with plaintiff's business relationships, and violations of the contracts not to engage in other commercial activities while employed by plaintiff. The trial court also erred in dismissing these causes of action.

For the foregoing reasons, defendants' motions to dismiss the complaint were improperly granted. Plaintiff must be afforded an opportunity to adduce evidence in support of its claim for relief.

Fradkin represents that he is no longer employed by Whiteman,

thereby rendering plaintiff's claim against him moot. Plaintiff counters that Fradkin's current employment status is unclear. This issue can be resolved quickly in the trial court.

Finally, McShane contends that plaintiff's action is barred by laches and that the contract involved lacks mutuality. The validity of these defenses should be determined at trial.

For the reasons stated, the order of the circuit court of Cook County dismissing plaintiff's complaint is reversed, and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Reversed and remanded.

McGILLICUDDY, P. J., and SIMON, J., concur.