McRAND, INC., Plaintiff-Appellant, v. JACOB VAN BEELEN *et al.*, Defendants-Appellees.

First District (3rd Division) No. 85—1699

Opinion filed November 13, 1985.—Rehearing denied December 26, 1985.

1046

Robert A. Downing, Sara J. Gourley, Eugene A. Schoon, and Timothy T. Scott, all of Sidley & Austin, of Chicago, for appellant.

Baker & McKenzie, of Chicago (Richard M. Franklin and Michael J. Garvey, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, McRand, Inc., brought this action for injunctive relief against defendants Jacob van Beelen, Larry T. Nelson and Gavel International Corporation, seeking to enforce restrictive covenants in an employment agreement. McRand appeals from the order of the trial court denying plaintiff's motion for preliminary injunction.

McRand is a Delaware corporation formed in 1971 and licensed to do business in Illinois. It is engaged in the business of designing and coordinating management and incentive award programs for major corporations and businesses. It prepares agendas and schedules, secures necessary transportation, locates and books hotels and conference facilities, arranges banquets, makes recreational facilities available to participants, and generally coordinates all activities with an

on-site representative.

In order to develop and maintain long-standing customers, McRand must first identify potential customers, then develop an in-depth awareness of the client's history, its structure and organization, its key decision makers, and its specialized needs and preferences. Once obtained, the information constitutes an important competitive advantage to McRand. Michael McClure, McRand's president, offered uncontradicted testimony that each major account takes one to three years and approximately $200,000 to develop before any bookings are made for the client. McClure also stated that McRand maintains con-tinued business relations with its customers. McClure further testified that McRand had approximately five major accounts, and each year its account personnel could hopefully obtain one new major account. In contrast, van Beelen testified that there was no set pattern in cus-tomer relationships, yet stated that many of McRand's customers re-peatedly return with new business.

Van Beelen was hired by McRand in December 1973. At various times he was a vice-president, a stockholder, and a director of McRand. His responsibilities included operating programs, developing proposals, and working closely with major accounts. Nelson, who was hired in 1976, was first a program manager and then a senior ac-counts manager. He operated incentive programs for customers. Each man was assigned to specific McRand accounts, and acted as the key contact between McRand and the customer. McClure testified that van Beelen and Nelson had access to all of McRand's information, which included program design, product information, customer needs, customer buying habits and purchasing requirements, customer dis-count information, McRand's profit margin and pricing analysis, and its future business plans with respect to its customers. Van Beelen and Nelson testified that this information is not helpful to them in their new business, but stated that its new business, Gavel Interna-tional Corporation, offered the same services as McRand, and some-times even provides these same services to McRand customers.

Both men entered their resignation on March 15, 1985. McClure testified that they told him the simultaneous resignations were a coin-cidence and that their future plans remained uncertain. McClure also testified that in 1983 and 1984, van Beelen solicited and obtained or-ders from, or had some responsibility for 79 client programs, and that billings to those clients represented 45% of McRand's gross revenues for those years. During that time, Nelson had responsibility for 21 cli-ent programs.

The employment agreements at issue were dated March 1, 1983,

and replaced agreements which also contained restrictive covenants which were signed by Nelson in 1976 and by van Beelen in 1977. The 1983 agreement provided in part:

> "For a period of two years following his termination of employment, the employee shall not solicit business relating to the services or products of the kind generally rendered or furnished by McRand *** or render or furnish such services and products to any of McRand's past or current clients for which McRand or its employees have rendered services billed to any such client at any time during the two-year period immediately prior to his termination of employment.
>
> For a period of one year following his termination of employment, the employee shall not solicit business from any of McRand's prospective accounts for which he has, during the two-year period immediately prior to his termination of employment, recorded business development time."

The agreement also provided that the employee must pay McRand 30% of all fees and commissions earned with respect to any client or prospective client of McRand for which the employee subsequently renders services. McRand was required to give 30 days notice of intent to terminate either employee.

Nelson and van Beelen testified that, prior to signing the agreement, each of them had discussed the restrictions with McClure, and each understood the restrictions. Van Beelen testified further that he discussed with McClure whatever was unclear and that he understood at the time of signing that certain harm would result from breaking the agreement. He also realized that signing the agreement was a precondition to his continued employment and participation in the bonus and profit sharing plans. Nelson testified that he understood that he would be dismissed if he did not sign the agreement. McClure testified that at the time of the signing, van Beelen desired that the two-year restriction be even longer, but stated that he would learn to live with a maximum restriction of two years, in reliance upon a recommendation by McRand's legal counsel.

In October 1983, 18 months before resigning from McRand, van Beelen incorporated Gavel, which had the purpose of providing the same services as McRand. At about the same time, van Beelen offered to buy McRand, but McClure declined. Gavel's 1984 annual report, filed with the Illinois Secretary of State, stated that Gavel engaged in business during the previous year.

In 1984, while still employed by McRand, van Beelen prepared a funding proposal for Gavel, naming Nelson as vice-president, and cir-

culated the proposal to a group directly affiliated with a McRand client. While still employed by McRand, van Beelen performed services for a McRand client, and sent that client an invoice on Gavel stationery. Van Beelen testified that he intended to reimburse McRand for the money received by Gavel.

After the two employees left McRand, a mailing went out from Gavel to McRand customers announcing van Beelen's and Nelson's association with Gavel. At the time of the preliminary injunction hearing, proposals were being prepared for at least three of McRand's customers, and services had been performed by Gavel for at least one McRand client. Van Beelen and Nelson testified that they would perform services for any McRand customer stating that it no longer wished to do business with McRand. McClure testified that a McRand client told him that the customer was aware of the possible breaches of the restrictive covenants, but Nelson had explained to the client that they could breach the agreement and pay McRand the 30% required under the liquidated damages clause of the agreement.

The trial court denied McRand's motion for a preliminary injunction on the basis that McRand lacked a protectable interest in its client relationships; that McRand had not suffered an irreparable injury and had an adequate remedy at law; that the agreements were unenforceable because the terms were unreasonable and lacked a geographic scope limitation; that there was no evidence of actual solicitation of McRand's customers by defendants; and the agreements were not supported by consideration and were contracts of adhesion. McRand brings this interlocutory appeal.

A party seeking a preliminary injunction must show a clear right or interest needing protection; no adequate remedy at law; irreparable harm if the injunction is not granted; and a reasonable likelihood of success on the merits. (*The Packaging House v. Hoffman* (1983), 114 Ill. App. 3d 284, 448 N.E.2d 947.) In order to show a likelihood of success on the merits, the petitioner need raise only a fair question as to the existence of the right claimed. (*Hayden's Sport Center, Inc. v. Johnson* (1982), 109 Ill. App. 3d 1140, 441 N.E.2d 927; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) The decision to grant or deny preliminary injunctive relief rests within the sound discretion of the trial court. (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) Its findings will not be disturbed absent a showing of abuse. (*Lawter International, Inc. v. Carroll* (1983), 116 Ill. App. 3d 717, 451 N.E.2d 1338.) The role of a reviewing court, therefore, is limited to examining the issues on their merits only insofar as is necessary to enable us to determine whether the trial court's

findings are contrary to the manifest weight of the evidence. *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.

■■ ■ Whether injunctive relief should issue here depends upon the enforceability of the restrictive covenant. (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) The question of whether a restrictive employment covenant is enforceable is one of law and depends upon the reasonableness of its terms. (*Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060.) The basic test is whether the covenant is reasonably necessary to protect the interests of the employer. (*Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) This is a determination which depends on the facts and circumstances of each case. (*J.D. Marshall International, Inc. v. Fradkin* (1980), 87 Ill. App. 3d 118, 409 N.E.2d 4.) We believe that the restrictive covenants in the present case are reasonable in their terms and that the trial court's findings otherwise are contrary to the manifest weight of the evidence.

■■ One requirement for the enforceability of a post-employment restrictive covenant is the existence of a protectable interest. The two-part test used by Illinois courts in cases similar to the present case requires that the employer have a near-permanent relationship with its customers; and that, but for the employment, the employee would not have had the contact with the customers. (*Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648; *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433.) Trade secrets are not necessary in order to establish a protectable interest in an employer's customers. *Morrison Metalweld Process Corp. v. Valen* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034.

The Illinois cases reviewing customer relationships reveal many objective factors a court may consider when determining whether a near-permanent relationship exists. We shall try to summarize those factors.

The number of years it takes the employer to develop the clientele indicates the parties' intention to remain affiliated indefinitely. People rarely invest a great deal of time in a business relationship that they do not intend to maintain. (See *Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648; *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433.) In the present case, McClure offered uncontradicted testimony that it takes one to three years to develop each major account before any business is actually booked for that client. This time factor indicates that customer relationships cannot be developed overnight, or after a few meetings, and that there is a near-permanent quality to the relationships.

The amount of money invested in developing a clientele is also an objective indication of the employer's intention to retain the customer relationship in a near-permanent status. (See *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060.) Here, McClure testified that each major account takes approximately $200,000 to develop before any actual business is booked for that client. The need for such a large pecuniary investment before the customer makes an investment reveals that near-permanent customer relationships are an essential part of McRand's business.

Another objective indication of the employer's intention to retain the customer relationship permanently is the difficulty involved in the process of developing the clientele. (See *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060.) McClure testified that numerous proposals and designs must be prepared, and often revised before a client makes a commitment. It was necessary to identify potential customers, develop an in-depth awareness of the customer history, structure, organization, key decision makers, special needs and unique preferences. The complexity and importance of developing a near-permanent clientele may also be apparent in the fact that McRand maintains only five major accounts presently, and expects an average of only one new major account per year.

In a highly competitive business, personal customer contact by the employee is also important in maintaining customer relationships. (*Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300.) In the present case, van Beelen and Nelson worked closely with customers. They were each assigned to specific accounts, and acted as the key contact between McRand and those accounts. Because of their extensive customer contact, both men received invaluable information including knowledge of customer needs, buying habits, discount information, profit margins, future business plans, and proposals, both accepted and rejected. McRand's emphasis on developing extremely close working relationships between its employees and customers indicate that McRand intended the relationships to be near-permanent.

The extent of McRand's knowledge of its clients is closely related to the factor of personal customer contact by its employees. A storehouse of intimate knowledge of customer requirements strongly indicates that a protectable interest in a near-permanent clientele exists. (*The Packaging House, Inc. v. Hoffman* (1983), 114 Ill. App. 3d 284, 448 N.E.2d 947; *Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300.) Van Beelen and Nelson had extensive contact, for 12 years and 8 years respectively, with McRand customers.

In 1983 and 1984, van Beelen had responsibility for 79 clients while Nelson had responsibility for 21 client programs. In their positions, both men had key positions with a great deal of intimate knowledge of the customers' needs. This detailed knowledge allowed them to offer a full range of management and incentive programs to their McRand customers. Defendants testified that this knowledge was not helpful in operating Gavel, but we find their opinion about use of knowledge acquired in one job for purposes of a future job to be irrelevant. The fact that they had that knowledge simply indicates that a near-permanent relationship existed between McRand and its customers. Employees' extensive and specific knowledge of customers is unnecessary in a business where the customers are transitory.

The factor of the length of time customers have been associated with the employer depends on the length of time the company has been in business, or the number of contacts a company has with a client over the relevant time period and how much time passes between each contact. (See *Wolf & Co. v. Waldron* (1977), 51 Ill. App. 3d 239, 366 N.E.2d 603; *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) Here, McRand's customers varied in the length of time they had been connected with McRand. Some customers had been serviced for two years while others had been customers for nine years. We find this length of time, in combination with the other factors, indicative of long-standing relationship.

Another factor indicating a long-standing relationship is the continuity of the relationship with the customer. Industries differ widely on how frequently customers need or use the services of the business, and whether that contact is often interrupted. (See *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060; *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) In the present case, the undisputed testimony was that McRand's major customers brought their business to McRand on a regular basis, and not as a "one-shot deal." We find the continuity of the relationship, even when the services are often only rendered annually, such as conventions, to be indicative of a near-permanent relationship.

The second part of the test which determines whether a protectable interest exists in customer relationships asks whether, but for the job with the employer, the employee would have come into contact with the customers. (See *Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648; *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433.) Here, both defendants were hired without previously having had any contact with McRand customers. The years both men worked for McRand provided them with the opportunity to develop close contacts

with McRand customers that they otherwise would not have developed.

The combination of the factors under part one of the test, plus the fact that the employees would not have developed these customer relationships but for their employment, leads us to hold that McRand does in fact have a protectable interest in its near-permanent customer relationships. We conclude that for purposes of a preliminary injunction McRand has raised a fair question as to the existence of a right needing protection.

The trial court also found that McRand failed to show any irreparable injury and that it had an adequate remedy at law. Once a protectable interest is established, irreparable injury is presumed to follow if the interest is not protected. (*Morrison Metalweld Process Corp. v. Valen* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034; *Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300.) In the present case, while working for McRand, van Beelen and Nelson set up a corporation to compete with McRand and later solicited its customers, thereby creating a situation threatening great and immediate harm to McRand.

The trial court evidently reasoned, in addition to its findings discussed above, that there would be no irreparable injury because there was no evidence of actual solicitation, and thus no breach of the covenant. We do not agree. While still employed by McRand, van Beelen, through Gavel, presented a funding proposal to a group directly affiliated with a customer of McRand; and van Beelen sent a Gavel invoice to a McRand client after performing services for the client. Subsequently, van Beelen and Nelson sent a mailing from Gavel to McRand customers notifying them of the new business; prepared proposals for at least three McRand customers; and performed services for at least one McRand customer. This evidence was sufficient to constitute solicitation.

In addition, van Beelen and Nelson testified that they would perform services for McRand clients who stated that they no longer wished to use McRand. This action is in direct violation of the language of the agreement, which prohibits the employees from both soliciting and furnishing services to McRand customers. The above facts show that defendants have violated the agreement's prohibition against furnishing services to, or soliciting business from McRand customers. Thus, an irreparable injury does exist.

Furthermore, we find that it would be difficult to ascertain money damages here, as the effects may be more far reaching than the time set out in the employment agreement. (*Cross Wood Products, Inc. v.*

*Suter* (1981), 97 Ill. App. 3d 282, 422 N.E.2d 953; *Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 392 N.E.2d 1148.) We also hold that the employment agreement's liquidated damages provision will not operate as a bar to injunctive relief enforcing a covenant not to operate as a bar to injunctive relief enforcing a covenant not to compete. (*SSA Foods, Inc. v. Giannotti* (1982), 105 Ill. App. 3d 424, 434 N.E.2d 460; *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1978), 62 Ill. App. 3d 671, 379 N.E.2d 1228.) The language of the agreement here also shows that the parties contemplated injunctive relief to prevent future violations, in addition to the damages for past violations. We do not believe that McRand has an adequate remedy at law.

▪ We also hold that continued employment for a substantial period is sufficient consideration to support the employment agreement. Without discussing the issue at length, Illinois courts have signaled support for the rule that continued employment for a substantial period beyond the threat of discharge is sufficient consideration for a restrictive covenant. (*Office Electronics, Inc. v. Grafic Forms, Inc.* (1978), 56 Ill. App. 3d 395, 372 N.E.2d 125 (agreement entered into 12 years after employment began is enforceable where employee continued working for over four years; covenant was a "quid pro quo of the \*\*\* continued employment"); *Smithereen Co. v. Renfroe* (1945), 325 Ill. App. 229, 59 N.E.2d 545 (agreement entered into three years after employment began is enforceable because agreement was made "in consideration of the employment of defendant by the plaintiff" and defendant in fact "continued in the employ of plaintiff" for five more years).) Although not directly addressing the issue of consideration, other Illinois courts have enforced restrictive covenants entered into after employment began where the employee continued in the job for a substantial period. *Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 433; *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433; *Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 392 N.E.2d 1148.

 In the present case, van Beelen continued to be employed for eight years after signing the original covenant, and was employed for two years after signing the 1983 covenant at issue. Nelson continued to be employed for nine years after signing the original covenant, and was employed for two years after signing the 1983 covenant. During that time, both men received regular raises and bonuses. They both resigned voluntarily after having retained their employment and having prospered from it. In addition, they were given responsibilities which they would not have received if they had not signed the cove-

nants. To hold that consideration is insufficient here would force the employer to discharge these employees one day and rehire them the next day after the covenant had been signed. (See *Simko, Inc. v. Graymar Co.* (1983), 55 Md. App. 561, 464 A.2d 1104.) We therefore find that sufficient consideration exists for the enforcement of these employment agreements at the preliminary injunction stage. Defendants, of course, may further argue the validity of this defense at trial. *J.D. Marshall, Inc. v. Fradkin* (1980), 87 Ill. App. 3d 118, 409 N.E.2d 4.

■■■ The trial court also held that the employment agreements at issue here are contracts of adhesion. We do not agree. In *Jefco Laboratories, Inc. v. Carroo* (1985), 136 Ill. App. 3d 793, this court found that a contract of adhesion existed where the employer threatened to withdraw financial support of the employees' defense in a suit against their former employer. The employees, therefore, were in a position of weakness, tried to negotiate, but their attempts were rejected. The present case has no similar facts. Van Beelen and Nelson apparently functioned successfully in high-level positions for several years; enjoyed substantial responsibilities; fully discussed the covenants before signing them; and signed a number of separate contracts containing similar restrictive covenants over the years. Furthermore, van Beelen apparently expressed a wish for covenants covering a period longer than two years, but was overruled by McRand's counsel. Van Beelen also made clear his desire to own a business similar to McRand only months after signing the restrictive covenant at issue. We conclude that these men were hardly incompetent to look out for their own interests, and fully understood the agreements they were signing.

■■■ We next must determine whether the present covenant is reasonably related to safeguarding the employer's protectable interest. In essence, this is a matter of time and territory and activity scope. The reasonableness is measured by its injurious effect on the general public and the extent of the hardship on defendant. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.) The restrictions run for two years following termination of employment. The covenant prohibits former employees from both soliciting and rendering services to any of McRand's past or current clients for which any McRand employee has rendered services billed during the two years immediately prior to termination. And, for one year after termination, the former employees are restricted from soliciting business from any of McRand's prospective accounts for which the employees had, during the two years prior to termination, recorded "business development time."

There is no evidence of injury to the public. The field is highly competitive and the testimony revealed that there are other companies similar to Gavel that can provide services to members of the public. See *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060; *Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 392 N.E.2d 1148.

Defendants are only restricted from selling to certain McRand customers. The rest of the field remains open to them for competition with McRand or any other company. Thus, we find that no undue hardship will be suffered by defendants upon issuance of the requested injunctive relief. *Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 392 N.E.2d 1148; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.

■ Finally, in determining whether the restrictions are necessary to protect the employer's interest, we look at the reasonableness of the time, territory and activity restrictions. We do not agree with the trial court's finding that the covenant was unenforceable because it contained no geographic restriction. Illinois courts have found covenants containing no geographic limitation to be valid if their purpose is to protect an employer from losing clients to a former employee who gains special knowledge of the client's needs while employed. (*Lawter International, Inc. v. Carroll* (1983), 116 Ill. App. 3d 717, 451 N.E.2d 1338; *J.D. Marshall, Inc. v. Fradkin* (1980), 87 Ill. App. 3d 118, 409 N.E.2d 4; *Wolf & Co. v. Waldron* (1977), 51 Ill. App. 3d 239, 366 N.E.2d 603.) Activity covenants, designed not to prohibit competition but to protect the employer's relationships with customers, do not require geographical limitations. (*Morrison Metalweld Process Corp. v. Valen* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034.) Therefore, although no geographical limitation is present, the covenant is not void as a matter of law. Instead, the covenant evidences an intent to protect McRand's customer relations. *J.D. Marshall, Inc. v. Fradkin* (1980), 87 Ill. App. 3d 118, 409 N.E.2d 4.

While activity restrictions have been approved, the restrictions must be reasonably related to the employer's interest in protecting the customer relations that its employees developed as a direct result of the employment. Courts are hesitant to enforce prohibitions against an employee's servicing not only customers with whom they had direct contact, but also customers they never solicited or had contact with while employed by plaintiff. (*Jefco Laboratories, Inc. v. Carroo* (1985), 136 Ill. App. 3d 793; *Morrison Metalweld Process Corp. v. Valen* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034.) In fact, the lack of geographic scope may be determinative where the territorial restric-

tions are greater than the area that the salesman served on behalf of the former employer. The employee should only be excluded from the territory where he was able to establish a certain relationship with the former employer's customers. *Lawter International, Inc. v. Carroll* (1983), 116 Ill. App. 3d 717, 451 N.E.2d 1338, citing *Central Keystone Plating of Illinois, Inc. v. Hutchison* (1965), 62 Ill. App. 2d 188, 210 N.E.2d 239.

The language of the two-year covenant in the present case restricts activities beyond the customers with whom van Beelen and Nelson developed relationships. Under the two-year restriction, it includes any of McRand's past or current clients for which any McRand employee has rendered services in the two years prior to defendants' termination. (Under the one-year restriction, it includes any potential McRand customer for whom the defendant himself recorded business development time.) The record, however, reveals that McRand is asking only for prohibition against servicing companies who were McRand customers at the time van Beelen and Nelson left, instead of all the customers serviced during the two years prior to leaving. That, however, does not cure the overbreadth of restricting defendants from servicing customers that any McRand employee contacted while defendants were employed by McRand. Nonetheless, the record shows that McRand is willing to have the court modify that request to whatever the court believes is reasonable. See *Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 392 N.E.2d 1148.

A court may modify a motion for preliminary injunction in some circumstances. (*Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 392 N.E.2d 1148.) The court is not required to follow the terms of the covenant exactly in issuing an injunction, especially where, as here, the covenant states that the terms are severable. The trial court may properly enjoin only activities involving the employer's customers with whom the former employees had been involved during their employment. *Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300.

On remand, the trial court should determine whether van Beelen and Nelson had contact with such a large percentage of customers as to require prohibition from soliciting or furnishing services to all companies who were McRand customers at the time of defendants' resignations. If this is not necessary to maintain the status quo, the trial court should exercise its discretion in modifying the language of the activity restriction appropriately.

In regard to the two-year and one-year time restrictions, we find them reasonable in light of McClure's testimony that it takes one to

three years to establish a major account.

McRand also had the duty to show a likelihood of prevailing on the merits. Because we find that McRand raises a fair question as to the existence of a protectable interest and because the reasonableness of the terms ensures the covenant's enforceability, we hold that the likelihood of prevailing has been established. *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414.

Based on the record, we conclude that McRand demonstrated that it had a protectable interest; that the agreements were reasonable and enforceable; that McRand suffered irreparable injury and did not have an adequate remedy at law; that it showed the likelihood of success on the merits; that the agreements were supported by adequate consideration; and that these agreements were not contracts of adhesion.

We believe that a preliminary injunction is quite appropriate here. It is wholly unfair when employees secretly start and operate a company competing with their present employer after the employer refuses to sell the company; lie about their future plans when they resign, knowing that they will be violating the restrictive covenants; solicit and furnish services to customers of their employer both before and after resigning; and tell the employer's customers not to be concerned about the restrictive covenants because the employees can breach the covenants but still avoid trouble by simply paying the employer a percentage of their profits.

For the foregoing reasons, the order of the circuit court of Cook County denying McRand's request for the issuance of a preliminary injunction is reversed and remanded for issuance of the preliminary injunction after consideration of the possible modification of the activity restriction and for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

McGILLICUDDY and RIZZI, JJ., concur.