HOWARD J. SHAPIRO *et al.*, Plaintiffs and Counterdefendants-Appellants and Cross-Appellees, v. REGENT PRINTING COMPANY, Defendant and Counterplaintiff-Appellee and Cross-Appellant.

First District (4th Division) No. 1—88—1812

Opinion filed December 28, 1989.

1006

JIGANTI, P.J., dissenting.

Deutsch, Levy & Engel, Chartered, of Chicago (Paul M. Levy, Scott B. Greene, and Terese Keirnan-Shust, of counsel), for appellants.

McBride, Baker & Coles, of Chicago (N.A. Giambalvo, Steven B. Varick, Malcolm H. Brooks, and Darryl C. Porter, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Howard J. Shapiro and Arla Graphics, Inc., plaintiffs, appeal from an order that enjoined them for two months from doing business with certain customers of Regent Printing Company, after Shapiro resigned from his employment with that company. Regent cross-appeals, contending that the restrictive covenant in Shapiro's employment contract is valid and enforceable and that, accordingly, an injunction for the contractual two-year period should have been entered.

For the reasons that follow, we dismiss the appeal on grounds of mootness.

BACKGROUND

Howard Shapiro worked for Regent Printing Company for approximately seven years. The printing business is owned equally by its founder's three sons, Lester, William, and Delbert. Howard is Delbert's son.

Howard had no prior experience in the printing business before joining Regent in 1981. For the first two years he was trained in printing production techniques in preparation for his becoming a salesman.

Toward the end of 1982 Howard and Regent negotiated an employment agreement, which contained a two-year restrictive covenant. At trial Howard stated his belief that he would be discharged if he did not sign the contract.

The purpose of the restrictive covenant was to prevent Howard from divulging to others or using for himself any "information, knowledge, data or property related to Regent's business obtained while employed by Regent." The provision further required him to abstain from "solicit[ing] or accept[ing] orders or business from any of Regent's customers who were customers of Regent during the one year period prior to the date of [Howard's] termination of employment with Regent."

Howard resigned from Regent in February 1988 and immediately began working for ARLA, one of Regent's competitors. He initiated the pending action after Regent notified certain customers that Howard was contractually prohibited from doing business with them. Plaintiffs' three-count complaint sought injunctive relief against Regent as well as compensatory and punitive damages for interfering with business expectancies. In addition, Howard sought an accounting for commissions alleged to be owing to him.

Regent countersued, alleging breach of contract on the part of Howard, conspiracy to breach and intentional interference with contract on the part of ARLA, and overpayment of commissions to Howard.

Although both sides moved for preliminary injunctive relief, Howard withdrew his motion, and the matter proceeded on Regent's motion for injunction to enforce the restrictive covenant.

After an evidentiary hearing the trial court determined that a short-term injunction was appropriate, based on the theory that Howard had breached his fiduciary duty to Regent because he had solicited customers for ARLA *before* leaving Regent. The court cited evidence indicating that Howard had solicited customers during the last week that he was in Regent's employ. However, Regent had not raised this theory in its pleadings, nor relied on it at the hearing. Regent was given leave to file amended pleadings after the hearing, to conform to the evidence by adding the breach of fiduciary duty cause of action.

In its ruling the court declined to fully analyze the reasonableness and scope of the restrictive covenant, finding instead that the covenant lacked sufficient consideration. Therefore, the court denied Regent's motion for preliminary injunction based on the two-year restrictive covenant. Nevertheless, the court granted the short-term injunction as an equitable remedy for Shapiro's breach of fiduciary duty. The court initially granted a 90-day injunction, to allow Regent to "catch up" or regain its competitive edge. After the parties' motions to reconsider, the court shortened the duration of the injunction

to 60 days.

On appeal, Howard challenges the court's order on the ground that he was denied an opportunity to present a defense on the breach of fiduciary duty issue. Regent cross-appeals from the order, contending that the restrictive covenant is valid and should be enforced for the full contractual period.

OPINION

■ We initially find that the injunction entered on May 9, 1988, was permanent in nature, despite some confusion in the briefs as to whether the injunction order was intended to be for preliminary relief. The distinction is critical to our ruling, as we explain below. Howard argues that the injunction is permanent in nature and effect. Regent, however, asserts that it was a preliminary injunction from which Howard should have appealed pursuant to Supreme Court Rule 307 (107 Ill. 2d R. 307). This rule governs interlocutory appeals as of right and requires that notice of appeal be filed from the injunction order within 30 days of its entry. This was not done.

Although the trial court commented on several occasions that the proceedings were for preliminary injunctive relief, the order entered grants a permanent injunction because it concludes the rights of the parties with respect to the injunction remedy. Regent did not move for any further hearings on permanent injunctive relief, and neither side sought interlocutory review under Supreme Court Rule 307. The trial court transferred the law counts of the complaint and counter-complaint to the law division and entered an express finding that the granting of the injunction was a final order from which there was no just reason to delay enforcement or appeal under Supreme Court Rule 304(a). We accordingly have jurisdiction over the appeal, as it is a final injunction order that was made expressly appealable by the trial court in its finding.

As the Illinois Supreme Court stated in *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 385-86, 483 N.E.2d 1271, 1277, "In far too many cases the distinction between *** a preliminary injunction, and a permanent injunction becomes blurred during the proceedings. *** The purposes of these two writs are different and distinct. The proof that is required to support them is not the same."

■ In the pending case, our review of the permanent injunction rests on a different footing than it would if we were presented with the same record on review under Supreme Court Rule 307, from entry of a preliminary injunction. The purpose of a preliminary injunc-

tion is to *raise a fair question* as to the existence of a right needing protection, not to decide controverted facts or the ultimate merits. *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386, 483 N.E.2d 1271, 1277.

Both sides focus on the existence of a protectable business interest as determining the question of whether Regent's restrictive covenant is enforceable. Most of the decisions cited in the parties' briefs involving the validity of restrictive covenants are appeals from entry of preliminary injunctive relief, however. These cases provide limited guidance as to the validity of the permanent injunction that was entered in the pending case. It is true that if a party cannot establish the existence of a protectable business interest, he or she will not be entitled to either preliminary or permanent injunction. (*Buzz Barton & Associates*, 108 Ill. 2d 373, 483 N.E.2d 1271.) Even if a party establishes a clear right entitled to protection, however, he must satisfy the other elements of permanent injunctive relief. A substantial likelihood of success on the merits will sustain the entry of a preliminary injunction; more proof is needed to support a permanent injunction.

■■■ The trial court did not reach the threshold issue of whether Regent had a protectable business interest because it determined that the restrictive covenant was not supported by adequate consideration. We do not agree, however, that the covenant lacked legal consideration. Under Illinois law, continued employment after signing an employment contract with a restrictive covenant is considered to be adequate consideration. (*McRand, Inc. v. Van Beelen* (1985), 138 Ill. App. 3d 1045, 486 N.E.2d 1306.) In this case Shapiro himself alleged that he believed that he would not retain his employment if he did not sign the employment agreement. We conclude that the trial court's ruling on this point was erroneous.

■■■ Our next concern is whether Regent proved that its restrictive covenant was valid and enforceable. A restrictive covenant in an employment agreement is generally held to be enforceable if it is reasonable in geographical and temporal scope and it is necessary to protect a legitimate business interest of the employer. (*E.g., Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034.) Although enforceability is a question of law, the reasonableness of any restrictive covenant is determined by the facts of the particular case. (*J.D. Marshall International, Inc. v. Fradkin* (1980), 87 Ill. App. 3d 118, 409 N.E.2d 4.) The court recognized in *Reinhardt Printing Co. v. Feld* (1986), 142 Ill. App. 3d 9, 16, 490 N.E.2d 1302, 1307, that there are two general situations in which an employer's interest in his customers is adequate for enforcing a covenant not to

compete: "(1) where, by the nature of the business, plaintiff has a near-permanent relationship with its customers and but for his or her employment, defendant would not have had contact with them; or (2) where the former employee learned trade secrets or acquired other confidential information while in plaintiff's employ and subsequently attempted to use it for his or her own benefit."

■ Regent asserts that it has established a protectable business interest under either test. Its evidence includes general testimony that the method by which Regent determined its pricing was something that only the Shapiro family knew, and that if a competitor received such information, it could undercut Regent's prices and lure away its customers. Howard Shapiro admits that his grandfather developed Regent's particular pricing system and that his father and uncles refined it. He concedes that it took him years to learn the system. However, he asserts that Regent took no steps to segregate or restrict access to the information; all of the production workers had access to this formula and used it in the course of business. The parties agree that all of the basic costs components that go into a job, such as cost of paper, cutting, film, ink, are common to the industry and that directories are available to guide printers in setting those costs.

We find it difficult to ascertain from the record what, exactly, was confidential about Regent's pricing formula. We agree with Howard that Regent's pricing formula could not be considered a trade secret. (See *Service Centers of Chicago, Inc. v. Minogue* (1989), 180 Ill. App. 3d 447, 535 N.E.2d 1132.) Nevertheless, we disagree with Howard's suggestion that only trade secrets—as distinct from confidential information—are entitled to legal protection. (See, *e.g., A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 514 N.E.2d 45 (employer's interest in his customers is proprietary and thus legally protectable if the employee acquired confidential information through his employment and substantially attempted to use it for his own benefit).) Our analysis of the confidential information evidence in this case leads us to conclude that it falls short of being a protectable business interest entitled to injunctive relief.

■ Regent also has asserted a near-permanent relationship with the customers in which it alleges a proprietary interest. Some had been customers of Regent for eight or more years, in an industry that has been characterized as being "highly competitive." (*Reinhardt Printing Co. v. Feld* (1986), 142 Ill. App. 3d 9, 16, 490 N.E.2d 1302, 1307.) If the pending appeal were from a preliminary injunction, we might have agreed that the evidence raises a fair question as to the

existence of a protectable interest under this test. If so, we might have found that Regent had sustained its requisite showing of the elements for provisional relief and maintenance of the status quo. (*A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 514 N.E.2d 45.) There is evidence of record that Regent enjoyed a near-permanent relationship with certain clients, some of which were steady customers for eight or more years, and that the company maintained specialized customer information that would enable it to better serve them. Howard would not have been exposed to these clients and information but for his employment with Regent.[1]

We do not find, however, that the record supports the entry of *permanent* injunctive relief based on the restrictive covenant. We cannot say with any degree of certainty that Regent sustained the burden of proof necessary for this relief.

Although the trial court stated that the pricing formula is "a valuable business asset of Regent and is proprietary and confidential information," it did not base its ruling on the validity of the restrictive covenant. By viewing the evidence as establishing that Shapiro had solicited Regent's customers while still employed, the trial court held that this breach of fiduciary duty justified the entry of the short-term injunction, to allow Regent to regain its competitive edge.

The evidentiary support for this theory is also scant, possibly because the parties were focusing on the validity of the restrictive covenant and did not pursue breach of fiduciary duty as a theory of the case. Indeed, Howard's appeal challenges the use of this theory as being unfair to him for that reason. We decline to rule on the soundness of this approach because it is irrelevant to our disposition. However, we note that the *result* of the trial court's ruling seems equitable un-

---

[1]Despite our acknowledgement that the requirements of a preliminary injunction may have been met, we cannot treat this appeal as one perfected under Supreme Court Rule 307. Neither side chose to treat it as a preliminary injunction. Regent did not move for further proceedings and did not file an interlocutory appeal within 30 days of the entry of the injunction, to test the validity of the court's refusal to enforce the covenant for the full two-year period. Likewise, Howard did not file an interlocutory appeal asserting that the order was a wrongfully issued preliminary injunction. Had he done so after moving to dissolve he would have preserved a possible claim for statutory damages under section 11—110 of the Code of Civil Procedure, assuming that the court agreed that the injunction had been wrongfully entered. (Ill. Rev. Stat. 1987, ch. 110, par. 11—110.) This section does not apply to permanent injunctions, as Howard concedes. (See *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 483 N.E.2d 1271.) Therefore, our disposition of this appeal does not give him any base upon which to assert a claim for damages under that section.

der all of the circumstances. We believe that the trial court attempted to reach an equitable compromise that would fairly conclude the injunctive branch of the litigation and put neither side at a severe disadvantage.

■ Although we could reverse the court's order on the basis that Regent failed to prove its right to permanent injunctive relief, we instead chose to dismiss the appeal as having become moot. The two-month injunction has long since expired, on its own terms. Our dismissal of the appeal leaves the parties to their other remedies at law and does not affect those rights.

For the foregoing reasons, we dismiss this appeal on the grounds that the relief requested by both the main and cross-appeals has become moot.

Dismissed.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

I respectfully dissent. Regent Printing Company is having difficulty getting its motion heard. Regent filed a motion for a preliminary injunction against Howard Shapiro. In accordance with the contract mentioned in the majority opinion, Regent sought to enjoin Howard from soliciting customers of Regent. The trial court, apparently in a well-meaning attempt to ameliorate a family situation, found that the agreement was invalid because of a failure of consideration. Howard had not contended that the agreement was invalid for this reason. Regent on appeal has again asked to have a preliminary injunction entered against Howard according to the terms of the contract. The majority has not ruled on Regent's motion because, as noted parenthetically in a footnote, the majority has found that Regent had no right to appeal under supreme court rules. Howard did not raise that issue here. Regent is entitled to have its motion considered on the issues raised by the parties.

The appeal should be placed in some perspective. The trial court entered an injunction for two months against Howard. Howard appeals, contending that the injunction was a permanent injunction and should not have been entered because he was only called upon to respond to a hearing on a preliminary injunction. The majority in this court found the injunction to be permanent but invalid because there was insufficient proof to warrant a permanent injunction. While I agree with the majority that the injunction is permanent, I would also

agree with Howard's contention that the permanent injunction should not have been entered because Howard was not called upon to respond to a hearing on a permanent injunction. I believe, as Regent contends on appeal, that Regent was entitled to a hearing on its motion for a preliminary injunction and that in light of the evidence a preliminary injunction should have been entered. I disagree with the majority holding, as noted in the footnote, that Regent did not have the power to cross-appeal from the denial of its motion for a preliminary injunction because it did not perfect its appeal pursuant to Supreme Court Rule 307. (107 Ill. 2d R. 307.) That rule provides that an aggrieved party may take an interlocutory appeal as a matter of right from the denial of an injunction. The majority makes no mention of the proposition that a cross-appeal may be taken pursuant to Supreme Court Rule 303(a)(3), which provides that any party may cross-appeal after the filing of an appeal. 107 Ill. 2d R. 307.

Regent's motion for a preliminary injunction is based on the provisions of the contract. Howard contends that the trial court was correct in finding that there was no consideration for the agreement. I agree with the majority that the contract was supported by adequate consideration and is therefore valid in this respect. Regent contends that the restrictive covenant is valid because it is reasonable in geographic scope and time and because Regent has a protectable business interest in its customers. Howard does not contest the time or the geographic scope of the covenant. Howard contends that in the factual setting here Regent does not have a protectable business interest.

Regent's specific response is that employers have a protectable interest in their customers under two circumstances: (1) where the employee has acquired confidential information and subsequently attempts to use it for his own benefit; or (2) where, by the nature of the business, the employer's relationship with its customers is near permanent, and but for his association with the employer, the employee would not have had contact with the customers in question. (*Corroon & Black of Illinois, Inc. v. Magner* (1986), 145 Ill. App. 3d 151, 494 N.E.2d 785; *The Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 480 N.E.2d 1273.) Regent contends that both of these situations exist in the present case. Howard responds that the facts of the instant case appear to be virtually identical to the recently decided case of *Reinhardt Printing Co. v. Feld* (1986), 142 Ill. App. 3d 9, 490 N.E.2d 1302, in which the court ruled that the evidence did not support a finding that the employer had a protectable business interest.

To be valid, a contract in restraint of competition must be reason-

able in its effect upon the parties and the public. The effect is reasonable if the agreement will not be injurious to the public, will not cause undue hardship to the employee and is not greater in scope than is necessary to protect the employer. (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21; *Dryvit System, Inc. v. Rushing* (1985), 132 Ill. App. 3d 9, 477 N.E.2d 35.) Employers have a legitimate and protectable interest in protecting their relationships with their customers. (*Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648.) An employer has no proprietary interest in its customers; however, the law will find a protectable interest where the employee acquired confidential information and attempted to use it, or where the customer relationship is near permanent and but for the employer the employee would not have had the customer contact. *Corroon & Black of Illinois, Inc. v. Magner* (1986), 145 Ill. App. 3d 151, 163, 494 N.E.2d 785, 792; *The Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 892, 480 N.E.2d 1273, 1279.

I believe, as did the majority and apparently the trial court, that the plaintiff had a protectable interest under the agreement. Howard has valuable, confidential customer information, including the names of personal contacts for each customer, the type of printing those customers need, the time of the month or year they need it, the credit worthiness of the customers, and their sales volume. As was stated in *Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300, this inside information may potentially give a former employee an unfair advantage in bidding against the employer. In *Reinhardt*, the case that Howard cites for support, the employee had little customer information. I believe that Regent was entitled to a preliminary injunction based on the evidence presented.

Regent has argued this appeal based on the cases which stand for the proposition that an employer has a protectable interest when an employee has acquired confidential information which he seeks to use for his own benefit, or the employer's customer relationships were near permanent and but for the employment the employee would not have had contact with the customers. I am concerned that the suggestion is that only under these circumstances are customer relationships protected. The *Reinhardt* case fosters this idea with the statement that customer lists and other customer information will be deemed a protectable trade secret only where information has developed over a number of years, at great expense and under tight security. I do not believe that these are appropriate limitations. The broad proposition of law in the area of restraint of competition is that such a contract is reasonable when it is not injurious to the public, will not cause undue

hardship to the employee, and is no greater than necessary to protect the employer. (*Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648; *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21.) The interest of the employer that needs to be protected here is the interest the employer has in its clients. More specifically, it is the interest the employer has in preventing an employee from taking over its customers through the contacts that the employee has had with those customers while he worked for the employer. *House of Vision*, 37 Ill. 2d at 38, 225 N.E.2d at 24.

In *House of Vision*, the employee was a contact lens fitter. He serviced between 700 to 800 customers in each of two offices of the employer. The work brought him into close contact with the customers and was of an intimate and highly personal nature. The employee was the principal, if not the only, point of contact between the plaintiff-employer and its customers. The employer sought to enforce the covenant that would restrict the employee from any employment in the same business within a radius of 30 miles. The Illinois Supreme Court acknowledged that an employer has a protectable interest in its customers, but refused to enforce the restrictive covenant in this case because it was unrealistic both as to time and space. The *House of Vision* court did not state that an employee's acquisition of confidential information or an employer's near permanent business relationship with customers is a prerequisite to an employer's protectable interest in its customers. *House of Vision*, 37 Ill. 2d at 38, 225 N.E.2d at 24.

The court in *House of Vision* cites to Blake, *Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625 (1960) (cited in *House of Vision*, 37 Ill. 2d at 39, 225 N.E.2d at 25). Blake comments that "an employer has a sufficient interest in retaining his present customers to support an employee covenant whenever the employee's relationship with customers is such that there is a substantial risk that he may be able to divert all or part of their business." (73 Harv. L. Rev. at 657.) Blake refers to this as a " 'customer contact' basis." Whether the employer warrants protection will depend upon the frequency, the locale and the nature of the contacts between the employee and the employer's customers. 73 Harv. L. Rev. at 659.

The court in *Cockerill* takes a similar view. The plaintiff veterinarian brought the defendant, also a veterinarian, into practice with him. The plaintiff sought to enforce a restrictive covenant when the defendant terminated the partnership. The court commented that when the plaintiff brought the defendant into association with him, he also brought him into contact with a clientele which the plaintiff had established over a period of years. The plaintiff had an interest in pro-

tecting his clients from being taken over by the defendant as a result of these contacts. The court commented that the plaintiff's clientele was an asset, the protection of which is recognized as a legitimate interest of an employer. *Cockerill*, 51 Ill. 2d at 184, 281 N.E.2d at 651, citing Annot., 43 A.L.R.2d §4, at 117 (1955).

Section 4(e) of the A.L.R. discussion on restrictive covenants (Annot., 43 A.L.R.2d §4 (1955)) states that the employer is entitled to protection against what is called a legitimate interest but not against ordinary competition. In order to be entitled to protection, the employer must be able to point to a legitimate interest: some additional facts and circumstances which render the restrictive covenant reasonably necessary. The annotation states at section 4(f) that the most important of the employer's legitimate interests to be protected through the enforcement of a restrictive covenant are the customer contacts that the employer has developed for his business. The protection of this asset against appropriation is recognized everywhere as an important legitimate interest of the employer. Elsewhere in the annotation, the employer's customer is described as the most important single asset of a business. Annot., 43 A.L.R.2d §4, at 162.

For these reasons, I believe that restrictive covenants may be enforceable under more circumstances than the narrowly drawn limitations argued in this appeal.