### Katherene M. Elliott, Appellant, v. Northern Trust Company et al., Appellees.

### Gen. No. 17,047.

1. WILLS—*contract to make a will.* A contract to make a will in a particular way, based upon sufficient consideration and clearly established, fastens a trust upon the property of the promisor which is enforceable against his heirs and personal representatives.

2. PLEADING—*when bill is not subject to general demurrer.* A bill to recover on a contract to make a will, which otherwise discloses a good cause of action, is not subject to general demurrer because

the contract is averred to be parol, while from the bill the actual contract appears to be in writing.

3. CONTRACTS—*expression of consideration.* The consideration for a contract need not be repeated in every sentence but may be expressed in the last sentence and have reference to all that precedes.

4. PLEADINGS—*demurrer admits material facts.* A demurrer admits all the material facts averred in the bill and they must be taken as true.

5. CONTRACTS—*when sufficiently certain.* A contract is sufficiently certain and definite as to the subject-matter which provides, "in case I return from Alaska whatever riches I possess she shall have 50 per cent of same."

6. CONTRACTS—*validity.* The fairness of a contract and the adequacy of consideration are judged as of the date of the contract and from the facts and circumstances surrounding its making.

7. CONTRACTS—*when considered fair.* A contract under which deceased, in consideration of five hundred dollars from complainant, his wife, promised to go to Alaska for an indefinite time and prospect for gold, and to give her half of whatever he might possess when he returned and will her all the property of which he might die possessed, will be held fair and the consideration adequate and sufficient on general demurrer to a bill to enforce it.

8. EQUITY—*when divorce does not affect right to maintain action on contract.* Divorce proceedings do not affect the right of complainant, the wife, to maintain her bill to enforce a contract made with her husband during their marriage and based upon a money consideration.

9. EQUITY—*general demurrer.* Where complainant, the wife, files a bill to enforce a contract made with deceased during their marriage, it is error to sustain a general demurrer where the bill states equitable grounds for relief.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded with directions. Opinion filed March 26, 1913.

GEORGE I. HAIGHT, for appellant.

BASTRUP & O'NEILL, for appellees.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

This appeal is prosecuted by Katherene M. Elliott

to reverse a decree of the Circuit Court sustaining the general demurrers of all the appellees to her bill in chancery and dismissing the same for want of equity, she having elected to stand by her bill.

The bill sets forth, in substance, that appellant in August, 1894, was duly married to one Henry Curtis Elliott and that during her married life with him she largely supported herself by her occupation of china and other painting, and by giving lessons in painting, and saved by reason of her said work the sum of $500 in money; that about October, 1897, appellant and her said husband resided in Chicago, Illinois, and that he was desirous of going to the territory of Alaska to prospect for gold and other valuable minerals and did not have the means wherewith to outfit and pay the expenses to be incurred in such enterprise; that therefore appellant and said Henry Curtis Elliott entered into an oral contract, whereby the said Henry Curtis Elliott agreed with appellant that in consideration of $500 then advanced to him by her he would execute a will thereby giving to her all that he should in the future possess, and that he would proceed to Alaska and prospect for and take up mining claims and real property for the joint use of himself and appellant; that pursuant to such agreement on January 31, 1898, the said Henry Curtis Elliott signed and delivered the following instrument in writing duly witnessed as his will by two witnesses, to-wit:

"KNOW ALL MEN BY THESE PRESENTS, that I, Henry Curtis Elliott, hereby bequeath to my wife, Katherene May Elliott, all my earthly possessions that I now possess or shall possess, and that this, my last will and testament, shall take effect immediately after my death.

"Also, that she shall act as sole executrix without bond. Also, that she shall have the entire amount of insurance. Also, that in case I return from Alaska whatever riches I possess she shall have 50 per cent. of same to do with in her own right as she shall see fit in consideration of five hundred dollars ($500) given me in cash to make trip to Alaska."

The bill further charges that in February, 1898, the said Henry Curtis Elliott went to Alaska, and there discovered and located many mineral claims and became owner of many mining claims and water rights, and by such discoveries and ownership of property became very wealthy, no part of which wealth he ever gave to appellant; that about December 24, 1902, the said Henry Curtis Elliott began a suit for divorce against appellant in the Superior Court of Cook county, charging her with desertion for the space of more than two years; that appellant appeared in said cause, answered his bill and filed a cross-bill charging him with wilful desertion for more than two years, and that on January 22, 1903, the court decreed her a divorce upon her cross-bill after a hearing and the dismissal of his said bill of complaint with costs; that in her cross-bill she prayed for alimony and that he represented in that suit that he was without funds or means and unable to contribute any sum however small to her support, and believing such representations and relying thereon and not being advised as to the means then possessed by him, she, therefore, did not insist upon an order for alimony in said divorce suit, and that he then knew that he had properties of great value; that after the said decree of divorce he married one Grace Van Wormer Elliott and lived with her until about December 30, 1909, the said Grace Van Wormer Elliott at the time of her said marriage knowing all the facts heretofore set forth; that on said last date the said Henry Curtis Elliott died in Alaska, leaving him surviving Grace Van Wormer Elliott, his widow, and Henry Curtis Elliott, Jr., a minor son of himself and his said widow as his only child; that on January 11, 1910, there was filed in the office of the Probate Court of Cook county, Illinois, a certain instrument in writing, purporting to be the last will and testament of said deceased, dated September 15, 1908, which was admitted to probate by said Probate Court February 9, 1910; that said last will purports to revoke all for-

mer wills, bequeaths all his property, save personal effects, to the Northern Trust Company, in trust for his said widow and child, and in case there be no child or children of his said son living at the time of the death of the last survivor of the two, his said son and widow, then 20% of the principal of said trust estate shall be paid in equal portions to A. J. Elliott and Ella Louise Elliott, brother and sister of the deceased, and the remainder of said fund, 80% thereof, shall by the terms of the will be used for the erection and endowment of a home for friendless children in or near Chicago, to be called The Henry Curtis Elliott Home for Friendless Children, for all of which uses and purposes said trustee, by the terms of the will, is to handle and manage said funds as provided by said will; that by the terms of said last will said widow is to receive all the personal effects of said deceased, his clothing, jewelry, books, furniture, cooking utensils, house furnishings, etc.

It is also provided by the said will that if issue fails the son, the fund shall be allowed to accumulate until it amounts to $2,000,000. It is further averred upon information and belief that the deceased died possessed of mining stock of the value of $300,000, and the said second will is set out in the bill *in extenso*. The said trustee and all of said devisees are made parties defendant to the bill, with the prayer for a discovery and accounting as to all property of which the said Elliott died possessed; that the court by its decree declare said second will void and the first will valid and binding, and that all property of which deceased died possessed be vested in appellant and that appellees convey same to her, and prays for other and further relief.

It is the well established law of this state that a contract to make a will in a particular way, based upon a sufficient consideration and clearly established, is enforceable in equity against the heirs, devisees and personal representatives of the party to such a con-

tract agreeing to make the will. Such contracts, unless void under the statute of frauds, or for other reasons, are construed "to bind the property of the testator or intestate so far as to fasten a trust upon it in favor of the promisee, and to enforce such trust against the heirs and personal representatives of the deceased." Dicken v. McKinley, 163 Ill. 318; Whiton v. Whiton, 179 Ill. 32; Hudnall v. Ham, 183 Ill. 486; Oswald v. Nehls, 233 Ill. 438; Jones v. Abbott, 228 Ill. 34; Kluseman v. Wessling, 238 Ill. 568.

It is not contended by appellees that the oral contract sought to be enforced in the case in hand is void by reason of the statute of frauds, and as the bill does not disclose that any portion of the property sought by the complainant is real estate, no question on the statute of frauds can arise in this consideration. It is insisted, however, that the contract is in writing, as disclosed by the will of January 31, 1898, delivered to appellant by Henry Curtis Elliott, and that that writing is the sole evidence of what the contract was, and that the terms of the contract therein expressed cannot be varied by parol evidence. If this contention be conceded as well taken, we are unable to see how it can materially affect the question of whether or not the general demurrer of appellees to appellant's bill should have been sustained by the court. Appellant states in her argument that in this suit she is seeking to recover on the contract to make a will alone. If the bill otherwise discloses a good cause of action by appellant against appellees on such a contract, the fact that it is averred to be a parol contract, and that the actual contract appears from the bill to be in writing in the will, will not make the bill the subject of a successful attack by a general demurrer, with the general prayer for relief in the bill. The portion of the parol contract upon which appellant bases her right to recover, the contract to make the first will, is also disclosed in the will itself. Every sentence in that will, following the first sentence thereof, begins with

the word "also," and the consideration therein named is expressed as a consideration for the doing by the testator of all the things recited as being done and promised by the testator as set forth in all the clauses and sentences preceding the phrase, "in consideration of Five Hundred Dollars ($500.00) given me in cash to make trip to Alaska." In other words, we think the meaning and construction of that will should be the same as if the said phrase naming the consideration had been written immediately following the words, "Know All Men By These Presents," and preceding the next words following in the first sentence of the will. The instrument as written is not only the will but also the contract of Elliott. It is usual to name the money consideration in the first part of a contract, and all things recited there following to be done by the party to receive the consideration, whether in the same or other sentences there following, are referable to the same consideration, when the question is raised as to what the consideration really is for the doing of anything promised by the contract. The consideration need not be repeated in every sentence of a contract, and we see no reason why it may not be expressed in the last sentence, and have reference to all things expressed in the preceding sentences.

It is also declared in the cases above cited that before a contract to make a will may be enforced in a court of equity it must be certain and definite in all its parts; it must be mutual and founded upon a sufficient and fair consideration, and it must not be unconscionable, inequitable or unjust. It must also be established by clear and convincing evidence. By the demurrer all of the material facts averred in the bill are admitted and must be accepted as true. The contract is certain and definite as to the promisor and the promisee, and it is mutual, and there is no controversy upon these propositions. It is also sufficiently certain and definite as to the subject-matter. It has been held

that "one-fifth part of the estate," "one-half of my estate," and "all of my property left at the time of my decease" are definite and certain descriptions of property. Jones v. Jones, 124 Ill. 254; Roehl v. Haumesser, 114 Ind. 311; Howe v. Watson, 179 Mass. 30.

It is insisted by appellees with much vigor that the agreement in this case was unfair to the promisor and that the consideration was inadequate, and that, therefore, it would be unconscionable to enforce it against appellees. It will be found upon an examination of the authorities that the fairness of the contract and the adequacy of the consideration for it are to be judged as of the time of entering into the contract. This being true, it may be said also that these questions should be considered and decided solely with reference to the parties to the contract, and particularly where the decision is on a demurrer to the bill. We would be unwilling to say that when all the facts are heard in such a case on a trial, and the court has seen and heard the parties, that the court should not to any extent be controlled in its decree by consequences that might result to the parties thereto from the decree itself. In reaching our decision, however, upon a general demurrer to the bill without any knowledge whatever of the parties or of the case, except what we have gotten from the bill and the briefs and arguments in the case, we are not at all disposed to look beyond the parties to the instant contract to arrive at our conclusion, knowing that the trial court will finally have the settling of the case after "weighing the evidence in the most scrupulous manner," as is required in this character of cases. Viewing the case as stated in appellant's bill, we feel that we must say that the contract in question was fair and the consideration adequate and sufficient. Henry Curtis Elliott by the admitted facts was a man with little or no means, but possessed with a spirit of energy and enterprise, and who had determined to go to Alaska in search of

riches, if he could raise the money. His wife by her energy and thrift had supported herself and saved up the $500 mentioned in the contract. It was all the money she had, we may assume, and she gave it up to him at his request, and agreed that he might go to Alaska and remain an indefinite time to prospect for gold or other minerals, and leave her during his absence to still provide her own support and live without his society and aid and comfort during the time of his absence, in consideration of his agreement that he would give her half of whatever he might possess when he returned and would will her all the property of which he might die possessed. The relation of the parties to each other must be considered, as well as their conditions in life, and the expectations they might reasonably entertain as to the probable results of his enterprise, in judging of the fairness of the contract, as well as the sufficiency of the consideration. How many considerate and prudent financiers have we in the country who would run after the chance of putting all of their saved-up earnings into such an enterprise, or to divide up their earnings and invest them in parts in a hundred such enterprises on the same terms as appellant made the investment in question? The nature or substance of Elliott's covenant or agreement with her was that of a covenant on his part to give her one-half he made when he returned and to retain for his life his half of what he made, with remainder to her in event that he owned any of it at his death, but with full power on his part to make any bona fide disposition of it during his life to another otherwise than by will. Barrett v. Geisinger, 179 Ill. 240. Many husbands would have felt duty bound in his then situation, without children, to will all the property of which they died possessed to their wives without any money consideration whatever.

The contract in question, as it seems to us, cannot be considered as unfair, and the consideration therefor insufficient, if it is judged as of the time it was entered

into, and from the facts and circumstances surrounding the making of it. It is only when the results of the contract are finally disclosed that any plausible arguments can be made for the assertion that its enforcement would be inequitable and unconscionable. The main portion of the argument of appellees' attorney is based upon the facts that appellant, if she finally succeeds, will receive or may receive something like $2,000,000 for her investment of $500, and that the widow will lose all of her rights as a widow, and the minor child all of his inheritance, and that both will be driven from the courts of justice penniless. We are not now passing upon what may be the final rights of the widow and minor child on the final hearing, nor of appellant, but simply upon the one question of whether or not the general demurrers ought to be sustained to appellant's bill. In view of the fact that it is averred in the bill that the widow knew all about the contract in question at and before the time she married Elliott, we do not see that she is in a much more favorable position to contend against appellant's claim than Elliott himself would be if he were resisting the bill in person.

In the case of Rutland Marble Co. v. Ripley, 10 Wall. (U. S.) 339, it was urged as a reason why specific performance of a contract should not be granted, that the contract by reason of time and changed conditions had become very unfair, unreasonable and unconscionable, and the court, in answer thereto, said:

"Besides it is by no means clear that a court of equity will refuse to decree the specific performance of a contract, fair when it was made, but which has become a hard one by the force of subsequent circumstances or changing events. Mr. Fry, in his work on Specific Performance, asserts that 'the question of the hardship of a contract is generally to be judged of at the time at which it is entered into; that if it then be fair and just, it will be immaterial that it may, by the force of subsequent circumstances or change of events, have become less beneficial to one party, except when

these subsequent events have been in some way due to the party who seeks the performance of the contract.' Judge Story, indeed, states the rule somewhat differently, and there are some cases that support his statement; but the rule as stated by Mr. Fry must be applicable to contracts that do not look to completed performance within a defined or reasonable time, but contemplate a continuous performance, extending through an indefinite number of years, or perpetually.''

In Warner v. Marshall, 166 Ind. 88, where it was urged that the consideration or service rendered was inadequate, for the amount the promisor agreed to will, the court said:

''Mere inadequacy of consideration is not, in and of itself, a sufficient reason for refusing specific performance. But we may remark in passing, that the extent of the consideration, there having been performance, should be measured by the breadth of appellant's undertaking, rather than the fact that the actual service was only about three and one-half years. There are no circumstances of overreaching or even of hardship in the case. It was decedent's own proposal. She could not take her property with her, and she procured by her agreement a loving service that she stood greatly in need of.''

The following cases on the same line will be found to fully sustain the doctrine that the fairness of the contract and the adequacy of the consideration are judged as of the date of the contract, and from the facts and circumstances surrounding the making of it, to-wit: Robinson v. Foust, 31 Ind. App. 384, 99 Am. St. Rep. 269; Howe v. Watson, 179 Mass. 30; Healy v. Healy, 55 App. Div. (N. Y.) 315; Crofut v. Layton, 68 Conn. 91; Jordan v. Abney, 97 Tex. 296; Casserleigh v. Wood, 56 C. C. A. 212, 119 Fed. 308; Morrill v. Everson, 77 Cal. 114; Southern Ry. Co. v. Franklin & P. R. Co., 96 Va. 693; Revell v. Hussey, 2 Ball & Beatty's Rep. (Ireland) 280; Prospect Park & C. I. R. Co. v. Coney Island & B. R. Co., 144 N. Y. 152,

26 L. R. A. 610; Spencer v. Spencer, 25 R. I. 239; Price's Adm'x v. Price's Adm'x, 111 Ky. 771.

We do not think that the divorce proceedings referred to in the bill in any way militate against appellant's right to maintain her bill. She is now seeking to enforce the contract to will her the property in question. It is a contract right based upon a money consideration, and not a contract right depending upon the marital relation for its validity, that is lost or extinguished when the marital relation is severed by divorce proceedings.

Our conclusion is that the bill of complaint of the appellant stated equitable grounds for relief and that the learned judge of the lower court erred in sustaining the demurrers to the bill. The decree of the court is, therefore, reversed and the cause remanded with directions to overrule the demurrers of appellees.

*Decree reversed and cause remanded with directions.*