**CURTIS 1000, INC., Plaintiff,**

v.

**Roy H. SUESS, and American Business Forms, Inc., Defendants.**

**No. 93–4093.**

United States District Court,
C.D. Illinois,
Peoria Division.

Feb. 1, 1994.

Michael R. Levinson, Chicago, IL, for plaintiff.

J. Jackson, Minneapolis, MN, Stuart R. Lefstein, Rock Island, IL, for defendants.

## MEMORANDUM OPINION

MIHM, Chief Judge.

On November 2, 1993, Plaintiff Curtis 1000, Inc. filed an Amended Complaint bringing an action against Defendant Roy H. Suess for breach of contract, trade secret misappropriation, and tortious interference with prospective business advantage and against Defendant American Business Forms, Inc. [ABF] for trade secret misappropriation, tortious interference with prospective business advantage and tortious interference with contract. Curtis brought this action in federal court based on the diversity jurisdiction statute, 28 U.S.C. § 1332.

On November 4, 1993, Curtis filed an Amended Motion for Preliminary Injunction to enjoin Suess and ABF from violating Suess's agreement with Curtis, from further misappropriation of Curtis's trade secrets, from further inferring with Curtis's prospective business advantage, and from further interfering with Curtis's agreement with Suess.

On December 22, 1993, following a two day evidentiary hearing, this Court denied Curtis's Motion for Preliminary Injunction. This written Memorandum Opinion supplements the Court's findings of fact, conclusions of law, and ruling following the evidentiary hearing of December 22, 1993.

## STATEMENT OF FACTS

Curtis sells customized stationery, forms and other office products to business customers. In the first week of May 1969, Curtis employed Suess as a sales representative. Curtis immediately commenced training Suess in Atlanta, Georgia. The training took approximately three weeks.

On May 29, 1969, following training, Suess signed his initial employment contract with Curtis. The contract provided that Suess would be Curtis's sales representative for the Rock Island County, Illinois and Scott County, Iowa area. The contract also provided under the heading entitled "General Terms," in pertinent part, that:

(c) The Salesman agrees to keep confidential such information as the Company may, from time to time, impart to him regarding its business affairs (including the names of customers), agrees that he will not at any time disclose said information in whole or in part to any person not in the employ of the Company.... the Salesman covenants and agrees that, during his employment with the Company and for two years next following the termination thereof, he will not directly or indirectly, either on his own behalf or for others, take or solicit orders for printing, envelopes or other products marketed by the Company in any territory in which he has solicited business for the Company or from anyone from whom he has solicited such business.

(d) Either the Company or the Salesman may terminate the employment of the Salesman hereunder, upon giving one week's written notice....

Suess continued to work for Curtis for over 24 years. During that time, Suess signed superseding employment contracts on July 15, 1977, February 11, 1981, and October 23, 1985, containing substantially identical provisions to those quoted above.

Suess testified that he decided to leave Curtis because he thought he was going to be fired. In mid to late August, Suess contacted four former Curtis representatives who were working for ABF. Suess then contacted Larry Zavadil, ABF's founder and president. On September 15, 1993, effective September 17, 1993, Suess resigned his employment with Curtis and took a position with ABF shortly thereafter.

ABF conducts the business of marketing substantially similar or competitive products to many of those marketed by Curtis. At an exit interview, Curtis collected certain materials from Suess and reminded him of his covenant not to compete with Curtis and his obligations regarding Curtis's confidential and proprietary information. Curtis also contacted Suess by telephone on October 7, 1993, and by letter on October 11, 1993, re-emphasizing the post-employment activity re-

strictions. On November 2, 1993, Curtis filed this action.

## CHOICE OF LAW

The May 29, 1969, employment agreement provides for the laws of Illinois to control the restrictive covenant provision. The laws of Georgia, however, were expressly agreed upon as the controlling law in the July 15, 1977, and February 11, 1981, contracts. In the latest contract, however, October 23, 1985, the parties agreed that the laws of Delaware would govern all matters pertaining to the validity, construction, interpretation, and effect of the Agreement.

■ In determining whether an express choice of law provision is to be given effect in Illinois, this Court must apply Illinois conflict of law rules. *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1080 (7th Cir.1986).

■ Under Illinois law, express choice of law provisions will be given effect subject to two limitations. *Potomac Leasing Company v. Chuck's Pub, Inc.*, 156 Ill.App.3d 755, 509 N.E.2d 751, 753, 109 Ill.Dec. 90, 92 (2nd Dist.1987). First, Illinois will give effect to laws of a chosen state "where it is not dangerous, inconvenient, immoral, nor contrary to the public policy of the local government." *Potomac*, 509 N.E.2d at 753, 109 Ill.Dec. at 92, *quoting McAllister v. Smith*, 17 Ill. 328, 334 (1856). Second, Illinois will give effect to an express choice of law provision where "there be some relationship between the chosen forum and the parties or the transaction." *Potomac*, 509 N.E.2d at 754, 109 Ill. Dec. at 93, *citing Mell v. Goodbody & Co.*, 10 Ill.App.3d 809, 295 N.E.2d 97 (1st Dist.1973). In *Potomac*, the court stated that the "purpose of this requirement is to preclude parties from arbitrarily selecting the laws of some jurisdiction which has no relation to the matter in controversy."

■ Illinois law disfavors private covenants restraining trade and requires the courts to carefully scrutinize such covenants to insure that they are reasonable and not contrary to public policy. *Peterson–Jorwic Group, Inc. v. Pecora*, 224 Ill.App.3d 460, 586 N.E.2d 676, 677, 166 Ill.Dec. 718, 719 (1st Dist.1991). In Illinois, "[a] restrictive covenant will be enforced only if the time and territorial limitations are reasonable and the restrictions imposed by the covenant are necessary to protect a legitimate business interest." *Peterson–Jorwic*, 586 N.E.2d at 677, 166 Ill.Dec. at 719. Preliminary injunctions to enjoin a violation of a restrictive covenant will not be granted unless there is an extreme emergency and the threat of serious harm that would result in the absence of an injunction. *Tyler Enterprises of Elwood, Inc. v. Shafer*, 214 Ill.App.3d 145, 573 N.E.2d 863, 865, 158 Ill.Dec. 50, 52 (3rd Dist.1991).

■ The parties do not dispute that, unlike Illinois law, a post-employment restrictive covenant under Delaware law does not require an employer to establish a legitimate protectable interest. Illinois has a legitimate policy interest in controlling trade in the state and the legitimate protectable interest requisite to an enforceable non-compete covenant was deemed necessary because such covenants restrict competition. The fact that Delaware law does not provide for this requirement and that covenants not to compete go directly to Illinois's ability to control trade in the state, this Court finds that Delaware law is repugnant to Illinois law.

This Court also finds that Illinois law should apply based on the relationship test. The Court finds that the parties, the transactions, and the occurrences in this case have no relationship with Delaware. Curtis is a Georgia corporation doing business in Illinois. Suess is an Illinois resident. All of the transactions forming the basis of Curtis's Complaint occurred in Illinois. ABF is a Minnesota corporation. Therefore, this Court finds no relationship between the parties to this action and the State of Delaware.

## PRELIMINARY INJUNCTION

In *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir.1992), the Seventh Circuit set forth the legal framework for analyzing preliminary injunctive relief. In an opinion written by Circuit Judge Flaum, the Seventh Circuit stated the following:

a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has "no adequate remedy at law" and will suffer "irreparable harm" if preliminary relief is denied. (Citations omitted). If the moving party cannot establish either of these prerequisites, a court's inquiry is over and the injunction must be denied. If, however, the moving party clears both thresholds, the court must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties. (Citations omitted).

*Abbott Laboratories,* 971 F.2d at 11–12.

■ In the reasonable likelihood of success on the merits prong of this analysis, the applicant must demonstrate a better than negligible chance of prevailing. *Omega Satellite Products Co. v. City of Indianapolis,* 694 F.2d 119, 123 (7th Cir.1982). The applicant must, at minimum, present a *prima facie* case, but need not show a certainty of winning.

### THE CONTRACT CLAIM

■ Under Illinois law, the Court must address two preliminary considerations before reaching the analysis of the enforceability of a post-employment covenant not to compete. The covenant must (1) be ancillary (subordinate to or attendant upon) to a valid contract, and (2) be supported by adequate consideration. *Scherer v. Rockwell Int'l Corp.,* 766 F.Supp. 593, 604 (N.D.Ill.1991), *quoting Millard Maintenance Service Co. v. Bernero,* 207 Ill.App.3d 736, 566 N.E.2d 379, 384, 152 Ill.Dec. 692, 697 (1st Dist.1990).

■ Following this initial determination, the Court must consider whether the post-employment restrictive covenant not to compete was "reasonably necessary to protect the interests of the employer." *Scherer,* 766 F.Supp. at 604, *quoting McRand, Inc. v. van Beelen,* 138 Ill.App.3d 1045, 486 N.E.2d 1306, 1311, 93 Ill.Dec. 471, 476 (1st Dist.

1985). The *McRand* court held that a restrictive covenant's reasonableness is measured by its hardship to the defendant, its effect upon the general public, and the reasonableness of the time, territory, and activity restrictions. *McRand,* 138 Ill.App.3d at 1056–57. In summary, a covenant not to compete will be enforceable "if it is reasonable in geographic and temporal scope and it is necessary to protect a legitimate business interest of the employer." *Scherer,* 766 F.Supp. at 604, *quoting, Shapiro v. Regent Printing Co.,* 192 Ill.App.3d 1005, 549 N.E.2d 793, 795, 140 Ill.Dec. 142, 144 (1st Dist.1989).

■ In Illinois, the courts have found two situations where the legitimate protectable interest of the employer exists: (1) where, by nature of the business, the employer has a near permanent relationship with its customers and but for his employment the former employee would not have had contact with them; or (2) where the former employee learned trade secrets or acquired other confidential information through its employment with the employer and subsequently attempted to use it for his own benefit. *Scherer,* 766 F.Supp. at 605, *quoting Label Printers v. Pflug,* 206 Ill.App.3d 483, 564 N.E.2d 1382, 1387, 151 Ill.Dec. 720, 725 (2nd Dist.1991).

The facts on the issue of whether adequate consideration exists are, in relevant part, undisputed. Curtis signed the initial agreement more than three weeks following employment and subsequent to receiving training in Atlanta, Georgia. The contract provided for only one week's employment following which Suess could be terminated without cause upon written notice. The subsequent contracts included substantially the same provision as the 1969 agreement.

Curtis argued that adequate consideration existed in this case. Curtis cited to a line of case authority under Illinois law supporting the proposition that continued employment for a substantial period of time is sufficient consideration to support an employment agreement. Suess and ABF, on the other hand, cited to a line of case authority under Illinois law for the proposition that the adequacy of consideration must be determined as of the time of entering into the contract. Both lines of cases have been shepardized by

the Court and are good law. Therefore, this Court has the uncomfortable burden of deciding which line of cases to follow based on the facts of this case.

## A. *The First Line of Cases*

For reasons of simplification, the Court will label the first line of cases the *O'Neill* line after *O'Neill v. DeLaney,* 92 Ill.App.3d 292, 415 N.E.2d 1260, 47 Ill.Dec. 947 (1st Dist.1980).

In *O'Neill,* the defendant husband sold a painting to the plaintiff for $10 and "other good and valuable consideration." A written contract embodying the terms of the agreement was prepared and signed by the two parties. Four years later, the defendant wife filed for divorce and claimed "special equities" in the painting and prayed for an equitable share. In an action to enjoin her husband from transferring title to the painting, the trial court found that the sale of the painting from the husband to the plaintiff was void because of inadequate consideration and lack of delivery. The First District of Illinois affirmed holding that $10 for a painting worth at least $100,000 at the time of transfer was grossly inadequate consideration because it would reduce the consideration requirement to a mere formality. *O'Neill,* 415 N.E.2d at 1266, 47 Ill.Dec. at 953.

In arriving at its holding, Justice Lorenz for the *O'Neill* court, Justices Sullivan and Mejda concurring, held that consideration to support a contract is any act or promise which is of benefit to one party or disadvantage to the other. *O'Neill,* 415 N.E.2d at 1265, 47 Ill.Dec. at 952. The *O'Neill* court stated that "[t]he adequacy of consideration for a contract is to be determined as of the time of entering the contract." *O'Neill,* 415 N.E.2d at 1265, 47 Ill.Dec. at 952, *citing Elliott v. Northern Trust Co.,* 178 Ill.App. 439 (1913). The court in *O'Neill* quoted Professor Corbin's treatise on contracts stating that "[i]f it was not bargained for, it was not a consideration, according to the definition that makes agreed bargain the test." *O'Neill,* 415 N.E.2d at 1265, 47 Ill.Dec. at 952.

Eight years later, Justices Sullivan and Lorenz relied on the rule of law in the *O'Neill* case in *Adams v. Lockformer Co.,* 167 Ill.App.3d 93, 520 N.E.2d 1177, 1181, 117 Ill.Dec. 826, 830 (1st Dist.1988) that a determination on the adequacy of consideration must be based upon what the consideration was at the time of entering into the contract.

The Fifth District also relied on the *O'Neill* case for the same rule of law. In *Russell v. Jim Russell Supply, Inc.,* 200 Ill.App.3d 855, 558 N.E.2d 115, 146 Ill.Dec. 152 (5th Dist.1990), a trucking company sought to enjoin a supply company from breach of a restrictive covenant not to compete. Bill and Jim Russell were brothers whose family had been in the trucking business since 1913. They bought the business from their father in 1977, and in 1985, they mutually decided to dissolve the partnership. Bill offered to buy out Jim according to their partnership agreement. After deciding upon the terms, Bill sought to include a provision proscribing Jim from going into the trucking business. The restrictive covenant was incorporated in the dissolution agreement.

The defendant argued that the covenant not to compete was an after thought which lacked consideration. In finding adequate consideration, the *Russell* court noted that the non-competition clause appeared in the only draft of the dissolution agreement, that the agreement was executed at a formal closing, and at that closing, the cash was transferred and the deed to real estate and assignment of titles to vehicles and the transport authorities were signed. In setting forth the law in the case, the *Russell* court stated that:

[v]aluable consideration for a contract consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other. [Citations omitted]. Adequacy of consideration for contract must be determined as of the time of entering the contract.
*Russell,* 558 N.E.2d at 120, 146 Ill.Dec. at 157, *citing O'Neill.*

Based on the facts, the *Russell* court held that, as of the date the contract was executed, consideration was both existent and adequate to support the contract which included

a covenant not to compete. *Russell*, 558 N.E.2d at 120, 146 Ill.Dec. at 157.

The *O'Neill* line of cases can be traced back to an early First District case. In *Elliott v. Northern Trust Co.*, 178 Ill.App. 439 (1st Dist.1913), the First District stated that for a contract to be enforceable:

it must be certain and definite in all of its parts; it must be mutual and founded upon a sufficient and fair consideration, and it must not be unconscionable, inequitable or unjust.

*Elliott*, 178 Ill.App. at 445.

The *Elliott* court went on to state that:

[i]t will be found upon an examination of the authorities that the fairness of the contract and the adequacy of the consideration for it are [sic] to be judged as of the time of entering into the contract. This being true, it may be said also that these questions should be considered and decided solely with reference to the parties to the contract, . . . .

*Elliott*, 178 Ill.App. at 446.

The *O'Neill* line of cases unequivocally require that an enforceable contract depends on adequate consideration at the time the contract was entered into by the parties. Subsequent continued employment would not be an appropriate factor in making the determination unless continued employment was part of the consideration given at the time the agreement was entered into by the parties.

### B. *The Second Line of Cases*

Curtis relies heavily on the *Millard Maintenance Service Co. v. Bernero*, 207 Ill. App.3d 736, 566 N.E.2d 379, 152 Ill.Dec. 692 (1st Dist.1990) case for obvious reasons. The Millard case is factually similar to the instant case. In *Millard*, the plaintiff was a janitorial contractor that employed the defendant from September 1980 through January 26, 1989. The defendant had no previous experience in the building maintenance field prior to working for Millard. The defendant rose to the level of senior account executive. During the course of his employ, the defendant signed three post-employment anti-competitive agreements, September 30, 1980,

January 1, 1981, and November 21, 1985. Thereafter, the defendant continued as an employee until July 26, 1989. The November 1985 agreement was the subject of the appeal. Justice Johnson, Justices McMorrow and Jiganti concurring, affirmed the trial court's holding, *inter alia*, that the non-compete covenant was supported by adequate consideration. Justice Johnson, for the First District, based the decision on the fact that the defendant continued to work for almost four years after signing the contract.

The *Millard* court relied on the cases of *Corroon & Black, Inc. v. Magner*, 145 Ill. App.3d 151, 494 N.E.2d 785, 98 Ill.Dec. 663 (1st Dist.1986), *McRand, Inc. v. van Beelen*, 138 Ill.App.3d 1045, 93 Ill.Dec. 471, 486 N.E.2d 1306 (1985), *Office Electronics, Inc. v. Grafic Forms, Inc.*, 56 Ill.App.3d 395, 372 N.E.2d 125, 14 Ill.Dec. 320 (2nd Dist.1978), and *Smithereen Co. v. Renfroe*, 325 Ill.App. 229, 59 N.E.2d 545 (1st Dist.1945) in support of its holding that continued employment for a substantial period is sufficient consideration to support an employment agreement. *Millard*, 566 N.E.2d at 384, 152 Ill.Dec. at 697. The *Millard* court noted that the facts at bar were analogous to the facts of the *Corroon* and *McRand* cases. With all due respect to Justice Johnson and the First District, in following this line of cases back to its origin, this Court finds that the rule of law relied on in the *Millard* opinion is flawed as applied to the facts of that case and the instant case.

In *Corroon*, the plaintiff, an insurance broker and consultant, hired the defendant as an account executive on February 27, 1978. The defendant signed an employment agreement containing a restrictive covenant on September 24, 1979. The defendant testified that in January 1984, he approached another commercial insurance brokerage house for employment. On July 2, 1984, the defendant told the plaintiff that he was leaving and taking his accounts with him. Justices Johnson and McMorrow also sat for the First District in that case. Justice Johnson, writing for the court, cited to the *McRand* case in support of the holding that sufficient consideration existed because the agreement was signed on September 24, 1979, and the

defendant resigned on June 30, 1984, over four years later. *Corroon,* 494 N.E.2d at 1312–1313, 98 Ill.Dec. at 669–70.

Similarly, a year earlier in *McRand,* the plaintiff had hired van Beelen in December 1973, and at various stages of employment van Beelen was vice-president, stockholder, and director of McRand. The plaintiff also hired Nelson, a co-defendant, in 1976. Nelson advanced to senior accounts manager over the term of his employment with McRand. On March 15, 1985, both Nelson and van Beelen tendered their resignation and started their own business, offering the same services as McRand. The employment agreements at issue were dated on March 1, 1983, and replaced agreements which had also contained restrictive covenants and which were signed by Nelson in 1976 and by van Beelen in 1977. The trial court denied McRand's motion for preliminary injunction for several reasons, including the reason that the agreement was not supported by consideration. Justice McNamara writing for the First District, Justices McGillicuddy and Rizzi concurring, reversed and remanded the case holding that continued employment for a substantial period is sufficient consideration to support an employment agreement. The *McRand* court reasoned that "[t]o hold that consideration is insufficient here would force the employer to discharge these employees one day, and rehire them the next day after the covenant had been signed." *McRand,* 486 N.E.2d at 1314, 93 Ill.Dec. at 479.

The *McRand* court relied on the *Office Electronics* and *Smithereen* cases in support of its holding. It is at this juncture, in 1985, that this Court finds the First District of Illinois fell away from a long and established line of case precedent supporting the rule of law stated in the *O'Neill* line of cases.

In *Office Electronics,* the plaintiff employed the defendant in 1961. The defendant became chief operating officer and president in 1970. In April 1973, the plaintiff and defendant entered into an employment agreement whereby the plaintiff promised to employ the defendant as president for a period ending December 31, 1977 at a $55,000 a year salary, with said salary to be supplemented by an annual bonus. Unlike the

facts in the *McRand* line of cases, the employment agreement in *Office Electronics* expressly provided for a definite four and one-half year term of employment, a $55,000 fixed salary, and an annual bonus computed by a specific formula. In other words, the agreement specified the consideration within the agreement itself. In addition, it should be noted that the question of the adequacy of consideration was not an issue in the *Office Electronics* case. Interestingly, however, the *McRand* line of cases relied on this case.

Finally, the First District in a 1945 decision in *Smithereen* considered whether adequate consideration existed as of the time the agreement was entered into by the parties. In *Smithereen,* the defendant argued that there was no mutuality of contract between the parties because the written agreement did not specify a period of time wherein the employer was required to employ the defendant. The issue, therefore, became whether the agreement was made in consideration of the defendant's employment. In determining the adequacy of consideration, the *Smithereen* court looked at the evidence existing at the time of contract and found that:

> the defendant signed said contract after making several changes in same; that defendant continued in the employment of plaintiff for a period of approximately five years after the execution of said agreement; that the plaintiff retained the defendant in his employ at a salary acceptable to the defendant and complied with the terms of the employment in all details; and that the defendant voluntarily left the employ of the plaintiff.

> \* \* \* \* \* \*

In the case of *Economy Grocery Stores Corp. v. McMenamy,* 290 Mass. 549 [195 N.E. 747], there was no agreement on the part of the plaintiff to employ the defendant for any fixed or definite period, and nothing was said as to how long the employee should work for the employer. The court in passing on the agreement said, (p. 552):

> "The contract was not void for lack of consideration. When accepted and acted on by the plaintiff, it implied accord-

ing to its reasonable construction a promise on the part of the plaintiff to employ the defendant. It was not wanting in mutuality. The amount of compensation to be paid was fixed by separate agreement."

So in the present case, the compensation and term of employment of the defendant by the plaintiff was fixed by separate agreement and same was fully performed by the plaintiff and accepted by the defendant. The contract here in issue was not void for want of mutuality.

*Smithereen,* 325 Ill.App. at 243–44.

The *Smithereen* court, like the *Economy Grocery* court, implied a promise on the part of the employer to employ the defendant where the agreement failed to expressly provide a fixed or definite time and where the defendant remained in the employer's employ for a substantial period of time, over five years. Where the contract was indefinite in terms of duration of employment, the court, using reasonable construction, made the terms definite by implying a concurrent promise evidenced by the employee's subsequent performance. The *Smithereen* court used subsequent continuing employment to justify its implication that the contract was definite as to a fixed period of employment at the time the agreement was made in order to find the existence of simultaneous mutuality. This plus compensation led the court to conclude that the agreement had adequate consideration at the time of agreement.

■ The *Office Electronics* and *Smithereen* cases support the rule of law that consideration must be bargained for. Consideration, as demonstrated in *Smithereen,* may be evidenced by subsequent performance, but consideration must be bargained for at the time the parties enter into the agreement.

■ The contract here provided for only seven days employment, after which Curtis could terminate Suess without cause by giving written notice. One week is *de minimis* in light of the fact that the employer could after a week restrict the employee from competing for two years. Because the contract expressly provides for only one week contin-

ued employment, this Court cannot, as the *Smithereen* court, imply a promise for substantial continued employment. In the instant case, the agreement looks to the future for consideration. Therefore, the agreement cannot possibly supply adequate consideration as of the time of agreement.

Therefore, the Court finds based on the facts that Curtis has failed to show any likelihood of success on the merits on the contract claim because of a lack of consideration.

While further discussion would be unnecessary for purposes of preliminary injunction under *Abbott Laboratories,* for purposes of appeal, the Court will make further findings of fact on the issue of "reasonableness."

■ An employer has a protectable interest in its customers, where by the nature of the business, the employer has a near-permanent relationship, and but for the employment, the employees would not have contact with the customers. *A.B. Dick Co. v. American Pro–Tech,* 159 Ill.App.3d 786, 514 N.E.2d 45, 49, 112 Ill.Dec. 649, 653 (1st Dist.1987). The court may consider the following factors to determine if the permanent relationship exists between the employer and its customers: (1) the number of years required to develop the clientele; (2) the amount of money invested to acquire the clientele; (3) the degree of difficulty acquiring the clientele; (4) the extent of personal customer contact by the employee; (5) the extent of the employer's knowledge of its clientele; (6) the duration of the customer's association with the employer; and (7) the continuity of the employer-customer relationship. *A.B. Dick,* 514 N.E.2d at 49, 112 Ill.Dec. at 653.

■ The Court finds the following as a matter of fact: that not many years are required to develop the clients based on consideration of the quality of the product, the dependability of service, and the price driven nature of this industry; that a lot of money was spent to develop the agent in this case; that the degree of difficulty to develop clientele is not significant to the extent that the industry is price driven and of little difficulty with respect to quality and service; that the extent of personal customer contact is significant; that Curtis has significant knowledge

of its customers; that in some cases Curtis has developed a long association with its customers; and that the continuity of relationship here is substantial. Therefore, this Court finds an adequate showing of a near-permanent relationship has been met.

Further, the Court found following the December 22, 1993, hearing that the remaining elements under the *Abbott Laboratories* analysis weigh in favor of granting the preliminary injunction.

## ILLINOIS TRADE SECRETS ACT

The Illinois Trade Secrets Act provides: "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d).

■ To establish improper use of trade secrets under Illinois law, the plaintiff must establish that the information in question was (1) secret (not generally known in the industry), (2) misappropriated (i.e., stolen, not independently developed or obtained from third party), and (3) used in the appropriator's business. *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265–66 (7th Cir.1992) (citing Illinois statutory and case law).

■ In *Elmer Miller, Inc. v. Landis*, 253 Ill.App.3d 129, 625 N.E.2d 338, 192 Ill.Dec. 378 (1st Dist.1993), the court held that a customer list is a trade secret if two tests are met. First, the list must be secret enough to derive economic value from it, and second, the information must be known only to the salesman who filled the orders—not available to other employees, the general public, or the employer's competitors. *Elmer Miller, Inc.*,

625 N.E.2d 338, 341–42, 192 Ill.Dec. 378, 381–82.

In *Elmer Miller*, the plaintiff paid $60,000 for the customer list and customer information from a custom tailor business. The court found that only employees who needed to know the information had access to it, that the customer files contained a high percentage of active, repeat customers making the list valuable to a competitor, that the customer files contained personal style and fabric preferences for individual customers, that the list could not be easily duplicated by the competitor, and most importantly, that the plaintiff alleged that the defendants improperly took part of the customer list when they quit.

In *Elmer Miller*, the court distinguished cases where a telephone directory could be used to find such things as restaurants or businesses that needed cleaning services or office support from the cases involving customer lists from a custom tailor business who needed a more particularized service. The court found that the employer's competitors could not duplicate the employer's list without a significant exposure of time, effort, and expense and that the list was secret enough that Elmer Miller derived economic value from it. *Cf. Colson Co. v. Wittel*, 210 Ill. App.3d 1030, 569 N.E.2d 1082, 155 Ill.Dec. 471 (4th Dist.1991) (information, notes, copies, reports, and other documents and various forms taken by employee of business engaged in design, marketing, production and sales of custom calendars not trade secrets under the Act; employer needed restrictive covenant for the protection sought).

■ The information listed in this case does not fall within the definition of trade secret as defined by the Act. Curtis's business customers are readily obtainable through the yellow pages of a telephone book, mailing lists, trade publications, association memberships and directories, association endorsements, or by simply driving down the street. Unlike the *Elmer Miller* case, the customer and pricing information involved here can be readily duplicated from a variety of sources. Curtis cites to *Burt Dickens & Co. v. Bodi*, 144 Ill.App.3d 875,

494 N.E.2d 817, 98 Ill.Dec. 695 (1st Dist. 1986). Unlike that case however, the evidence here shows that Suess did not improperly take any physical customer or pricing list from Curtis. In fact, the evidence shows that Curtis gathered the documents from Suess at the exit interview. This fact was pertinent to the holding in *Burt Dickens*.

This Court finds that the information involved here does not constitute a trade secret under Illinois law. Therefore, Curtis failed to establish a likelihood of success on the merits with this claim.

### INTERFERENCE CLAIMS

 In a tortious inference with business relationship or prospective business advantage claim, under Illinois law, the plaintiff must establish (1) the existence of a valid business relationship (not necessarily evidenced by an enforceable contract) or expectancy; (2) the knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill. App.3d 359, 300 N.E.2d 331, 330 (3rd Dist. 1973). Here, the interest protected is the reasonable expectation of economic advantage.

The facts of this case fail to establish an intentional interference. The parties do not dispute that, if not bound by a restrictive covenant, Suess could start his own business and compete with Curtis. The facts fail to establish any conduct on ABF's part demonstrating an inducement. Suess initiated the contact with ABF for employment. The evidence shows that Suess expected to be terminated by Curtis. Suess's belief was reasonably based on a letter and an ad listed by Curtis in a newspaper seeking a sales representative for the same geographical area. This Court would be hard pressed to find that ABF interfered based on these facts.

This Court therefore finds as a matter of fact that ABF did nothing to affirmatively induce or cause a breach or termination of a business relationship or expectancy. Curtis has failed to establish a likelihood of success on the merits on this claim.

In a tortious interference with contract claim, under Illinois law, the elements are: (1) a valid and enforceable contract, (2) the employee's knowledge of the existence of the contract, (3) the employee's intentional and malicious inducement of the breach of the contract, (4) breach of contract caused by the employee's wrongful conduct, and (5) resultant damage to the employer. *George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1330 (7th Cir.1983).

As previously discussed, Curtis has failed to establish the existence of a valid enforceable contract for a claim under this tort.

### CONCLUSION

For the reasons stated at the close of evidence on December 22, 1993, and the reasons set forth above, this Court denies Curtis's Amended Motion for Preliminary Injunction.